UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

|  |  |  |
|---|---|---|
| MICHAEL JAMES KRUSELL, # 460118, | ) ) ) ) | |
| Plaintiff, | ) ) | Case No. 1:15-cv-1159 |
| v. | ) ) | Honorable Paul L. Maloney |
| SAM HUNT, et al., | ) ) ) | |
| Defendants. | ) ) | |

_____)

## REPORT AND RECOMMENDATION

This is a civil rights action brought *pro se* by a former state prisoner under

42 U.S.C. § 1983.  This lawsuit arises out of conditions of plaintiff's confinement at

the Emmett County Jail where he was being held on a parole detainer stemming from

earlier criminal convictions.  The defendants are Sergeant Sam Hunt, Officer

Benjamin Britton, and Officer Kristy Allen.  Plaintiff alleges that, on April 13, 2014,

defendants used excessive force against him in violation of his constitutional rights.

He also alleges that, on the same date, Sergeant Hunt subjected him to strip searches

in violation of his constitutional rights.[1]  Plaintiff seeks an award of damages.[2]

The matter is before the Court on defendants' motion for summary judgment. (ECF No. 40).  Plaintiff opposes the motion.  (ECF No. 45, 46).  For the reasons set forth herein, I recommend that defendants' motion for summary judgment be granted in part and denied in part.  I recommend that defendants' motion be granted on all plaintiff's claims against Officers Allen and Britton and all plaintiff's claims against Sergeant Hunt related to the strip searches.  I recommend that defendants' motion be denied on plaintiff's claims that defendant Hunt used excessive force in violation of his Eighth Amendment rights when he performed a takedown maneuver and when he tased plaintiff while plaintiff was under complete control and offering no resistance.

## Applicable Standards

A.    Summary Judgment

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to

---

[1] Plaintiff's complaint (ECF No. 1) does not mention any constitutional provision.  His briefs (ECF No. 45, 46) likewise fail to identify any specific constitutional underpinnings.   Because plaintiff stood convicted of the crimes forming the foundation of the detainer, the Eighth Amendment was his constitutional source of protection against excessive force.  *See Coley v. Lucas Cty*, 799 F.3d 530, 537 (6th Cir. 2015).  Although claims related to strip searches are generally analyzed under the Fourth Amendment, a convicted prisoner's claim that he was deprived of a right to bodily privacy arguably should be decided solely under Eighth Amendment standards.  *See Hunter v. Palmer*, No. 1:17-cv-109, 2017 WL 1276762, at *10 n.3 (W.D. Mich. Apr. 6, 2017).

[2] All other claims have been dismissed.  (ECF No. 9, 10).

judgment as a matter of law.  FED. R. CIV. P. 56(a); *McKay v. Federspiel*, 823 F.3d 862, 866 (6th Cir. 2016).  The standard for determining whether summary judgment is appropriate is "whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' "  *Rocheleau v. Elder Living Const., LLC*, 814 F.3d 398, 400 (6th Cir. 2016) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)).  The Court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *France v. Lucas*, 836 F.3d 612, 624 (6th Cir. 2016).

When the party without the burden of proof seeks summary judgment, that party bears the initial burden of pointing out to the district court an absence of evidence to support the nonmoving party's case, but need not support its motion with affidavits or other materials "negating" the opponent's claim.  *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *see also Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005).  Once the movant shows that "there is an absence of evidence to support the nonmoving party's case," the nonmoving party has the burden of coming forward with evidence raising a triable issue of fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  To sustain this burden, the nonmoving party may not rest on the mere allegations of his pleadings.  *See Ellington v. City of E. Cleveland*, 689 F.3d 549, 552 (6th Cir. 2012); *see also Scadden v. Warner*, 677 F. App'x

996, 1001 (6th Cir. 2017).  The motion for summary judgment forces the nonmoving

party to present evidence sufficient to create a genuine issue of fact for trial.  *Street*

*v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1990); *see Newell Rubbermaid,*

*Inc. v. Raymond Corp.*, 676 F.3d 521, 533 (6th Cir. 2012).  "A mere scintilla of evidence

is insufficient; 'there must be evidence on which a jury could reasonably find for the

[non-movant].' "  *Dominguez v. Correctional Med. Servs.*, 555 F.3d 543, 549 (6th Cir.

2009) (quoting *Anderson*, 477 U.S. at 252); *see Brown v. Battle Creek Police Dep't*, 844

F.3d 556, 565 (6th Cir. 2016).

> B.    Qualified Immunity

Defendants argue that they are entitled to summary judgment on the basis of

qualified immunity.  "Once [an] official[ ] raise[s] the qualified immunity defense, the

plaintiff bears the burden to 'demonstrate that the official [is] not entitled to qualified

immunity.' "  *LeFever v. Ferguson*, 645 F. App'x 438, 442 (6th Cir. 2016) (quoting

*Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006)); *see Hermansen v.*

*Thompson*, 678 F. App'x 321, 325 (6th Cir. 2017).

"A government official sued under section 1983 is entitled to qualified

immunity unless the official violated a statutory or constitutional right that was

clearly established at the time of the challenged conduct."  *Carroll v. Carman*, 135 S.

Ct. 348, 350 (2014); *see Taylor v. Barkes*, 135 S. Ct. 2042, 2044 (2015); *Lane v. Franks*,

134 S. Ct. 2369, 2381 (2014).  The first prong of qualified immunity analysis is

whether the plaintiff has alleged facts showing that each defendant's conduct violated

a constitutional or statutory right. *See Saucier v. Katz,* 533 U.S. 194, 201 (2001). The second prong is whether the right was "clearly established" at the time of the defendant's alleged misconduct. *Id.* Trial courts are permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

A qualified immunity defense can be asserted at various stages of the litigation, including the summary judgment stage. *See English v. Dyke*, 23 F.3d 1086, 1089 (6th Cir. 1994). The qualified immunity inquiry at the summary judgment stage is distinguished from the Rule 12(b)(6) stage in that generalized notice pleading no longer suffices, and the broader summary judgment record provides the framework within which the actions of each individual defendant must be evaluated. At the summary judgment stage, "the plaintiff must, at a minimum, offer sufficient evidence to create a 'genuine issue of fact,' that is, 'evidence on which a jury could reasonably find for the plaintiff.' " *Thompson v. City of Lebanon, Tenn.*, 831 F.3d 366, 370 (6th Cir. 2016); *see Gardner v. Evans*, 811 F.3d 844, 846 (6th Cir. 2016).

In *Brosseau v. Haugen*, the Supreme Court examined the underlying purpose of the requirement that the law be clearly established:

> Qualified immunity shields an officer from suit when she makes a decision that, even if constitutionally deficient, misapprehends the law governing the circumstances she confronted. . . . Because the focus is on whether the officer had fair notice that her conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct. If the law at the time did not clearly establish that the officer's conduct would violate the Constitution, the officer should not be subject to liability or, indeed, even the burdens of litigation.

543 U.S. 194, 198 (2004); *see also Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) ("The dispositive question is whether the violative nature of the particular conduct is clearly established.") (citation and quotation omitted); *City & County of San Francisco, Calif. v. Sheehan*, 135 S. Ct. 1765, 1774 (2015) ("An officer cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in his shoes would have understood that he was violating it, meaning that existing precedent placed the statutory or constitutional question beyond debate.") (citations and quotations omitted).  Qualified immunity is an immunity from suit rather than a mere defense to liability.  *Plumhoff v. Rickard*, 134 S. Ct. 2012, 2019 (2014).

The Supreme Court has repeatedly held that the second prong of the qualified immunity analysis " 'must be undertaken in light of the specific context of the case, not as a broad general proposition.' " *Brosseau v. Haugen*, 543 U.S. at 198 (quoting *Saucier v. Katz*, 533 U.S. at 201); *see White v. Pauly*, 137 S. Ct. 548, 552 (2017).  Moreover, courts are "not to define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced."  *Plumhoff v. Rickard*, 134 S. Ct. at 2023 (citations and quotations omitted); *see White v. Pauly*, 137 S. Ct. at 552.

"The burden of convincing a court that the law was clearly established 'rests squarely with the plaintiff.' " *Key v. Grayson*, 179 F.3d 996, 1000 (6th Cir. 1999)

(quoting *Cope v. Heltsley*, 128 F.3d 452, 459 (6th Cir. 1997)); *see Shreve v. Franklin County, Ohio*, 743 F.3d 126, 134 (6th Cir. 2014); *T. S. v. Doe*, 742 F.3d 632, 635 (6th Cir. 2014).  The burden applies to each claim.  *See Johnson v. Moseley*, 790 F.3d 649, 653 (6th Cir. 2015).

## Proposed Findings of Fact

The following facts are beyond genuine issue.  On March 31, 2014, plaintiff was arrested and held in the Emmett County Jail on a parole detainer.  (ECF No. 40-1, PageID.297; ECF No. 40-2, PageID.299-305; ECF No. 40-3, PageID.307; Plf. Dep. at 13-18, ECF No. 40-4, PageID.313-14).  Plaintiff had violated multiple terms of his parole, including not reporting and testing positive for opiate use.  (Plf. Dep. at 16-17, 22, 26, ECF No. 40-4, PageID.313-16).  Plaintiff had been in the Emmett County Jail more than five times before this arrest.  He was familiar with Sergeant Sam Hunt, Corrections Officer Benjamin Britton, and Corrections Officer Kristy Allen because it was a small jail and he had "been in and out of there multiple times."  (*Id.* at 23-24, PageID.315).  Plaintiff had no history of poor treatment, arguments, or confrontations with the defendants.  (*Id.* at 24, PageID.315).

On April 13, 2014, plaintiff was housed in a six-man cell.  (*Id.* at 25, PageID.316).  Plaintiff was receiving Wellbutrin medication twice a day.  Rather than swallowing the medication, however, he would hide it.  Later he would go to his bunk, crush the medication, and snort it in order to get high.  Plaintiff used his mattress to conceal his actions from observation through the cell's camera.  On April 10, 2014,

jail officials received a tip that plaintiff was "cheeking"[3] his medication.  Video footage

showed that, after plaintiff received his morning medication, he would routinely go

to the toilet area with toilet paper in his hand, put his back to the camera, then a

couple of seconds later, walk away.  The video recordings also showed plaintiff lifting

up his mattress and placing his head under the edge of the mattress.  (Plf. Dep. at

32-33, 55-64, PageID.323-25; Hunt Aff. ¶¶ 3-8, ECF No. 40-5, PageID.330; ECF No.

40-8, PageID.346; ECF No. 40-9, ECF No. 40-10).

On the morning of April 13, 2014, plaintiff appeared to be following the same

drug abuse pattern.  Shortly after Corrections Officer Allen gave plaintiff his morning

medication, plaintiff was observed with toilet paper in hand headed to the toilet area.

Plaintiff then sat down at the breakfast table, and he appeared to place something in

the front of his pants.  Sergeant Hunt and Officers Britton and Allen entered the cell.

The six inmates were ordered to exit the cell for a cell search and they were ordered

not to touch or grab anything.  None of the inmates were wearing restraints.  The

video recording shows that plaintiff was the second inmate to exit.  Plaintiff was not

wearing any restraints.  Sergeant Hunt and Officer Britton followed behind him.

(Hunt Aff. ¶¶ 9-10, ECF No. 40-5, PageID.330-31; Allen Aff. ¶¶ 7-8, ECF No. 40-7,

PageID.342; ECF No. 40-12).

According to Sergeant Hunt and Officer Britton, immediately upon exiting the

---

[3] "Cheeking" is a term used to describe a prisoner's action of concealing and pretending to swallow medication.  *See Meador v. Growse*, No. 12-cv-120, 2014 WL 970105, at *1-2 (E.D. Ky. Mar. 14, 2014).

cell, plaintiff quickly shoved his right hand down the front of his pants and attempted to turn from Sergeant Hunt.  Sergeant Hunt attempted to gain control of plaintiff's right arm and ordered plaintiff to remove his right hand from his pants.  Instead, plaintiff tried to turn around and pull his right arm free from Sergeant Hunt's grip. (Hunt Aff. ¶¶ 11-12, PageID.330-31).

Plaintiff testified that he turned towards Sergeant Hunt, but he only did so after hearing his name called.  He denies trying to put his right hand into his pants. (Plf. Dep. at 46-50, PageID.321-22).   Plaintiff testified that his left hand "was swinging" as he walked and that it "probably kind of swung out."  (Plf. Dep. at 48, ECF No. 40-4, PageID.321).

Sergeant Hunt used a takedown maneuver.  He does not claim that he did so in response to the movement of plaintiff's left hand or arm.  Sergeant Hunt states that he used force because plaintiff "tried to spin around at [Hunt] and pull his right arm free from [Hunt's] grip.  (Hunt Aff. ¶ 11, ECF No. 40-5, PageID.331).  Plaintiff testified that Sergeant Hunt grabbed his left arm and used a sweeping motion with his leg to knock plaintiff off his feet.  Plaintiff sustained facial injuries when he hit the floor. (Plf. Dep. at 35-38, 46-48, 54, ECF No. 40-4, PageID.318-19, 321, 323; Hunt Aff. ¶ 12, ECF No. 40-5, PageID.331; Britton Aff. ¶ 9-10, ECF No. 40-6, PageID.337).

Once plaintiff was on the floor, Sergeant Hunt and Officer Britton used "Judo type wrist lock moves" to control plaintiff's arms.  (Plf. Dep. at 36-37, 49-50, 54, ECF No. 40-4, PageID.318-19, 322; Hunt Aff. ¶ 13, ECF No. 40-5, PageID.331; Britton Aff. ¶ 9-10, ECF No. 40-6, PageID.337; ECF No. 40-14).   Officer Allen heard the

-9-

commotion and immediately went to assist.  (Allen Aff. ¶¶ 8, 9, ECF No. 40-7, PageID.342).  The video recording from inside the cell shows that it was only two or three seconds after plaintiff, Sergeant Hunt, and Officer Britton exited when Officer Allen rushed out of the cell, temporarily leaving four unrestrained inmates behind her and the cell's door open.  (ECF No. 40-12).  Officer Allen attempted to hold plaintiff's legs until restraints could be applied.  (Allen Aff. ¶ 11, ECF No. 40-7, PageID.342-43).

According to all defendants, plaintiff ignored multiple orders by Sergeant Hunt and Officer Britton to show his hands and stop resisting.  Plaintiff was bleeding.  In an attempt to gain control of plaintiff, reduce the risk of further injury to him, and reduce the risk of injury and further biohazard exposure to himself and Officer Britton, Sergeant Hunt gave a signal that he would be using a taser and then deployed his taser to subdue plaintiff.  Plaintiff was placed in handcuffs.  Plaintiff suffered a small cut above his left eye and two small cuts on his nose during the incident and he was transported to the hospital where he received stitches.  (Hunt Aff. ¶¶ 15-23, ECF No. 40-5, PageID.332-33; Britton Aff. ¶¶ 9-21, ECF No. 40-6, PageID.336-38; Allen Aff. ¶¶ 7-21, ECF No. 40-7, PageID.342-44; ECF No. 40-17, PageID.387-90; ECF No. 40-18, PageID.392-95).  Plaintiff states that he "was under control" and "wasn't resisting" and he was "completely controlled" and "couldn't

move" when he was tased.[4]  (Plf. Dep. at 38, 50, PageID.319, 322).

Emmett County Jail policy directives provide for strip searches when an officer has reasonable suspicion that the inmate has contraband, weapons, drugs, or some other prohibited substance or property and when a prisoner travels outside the jail and returns.  (ECF No. 40-20, PageID.401).  Strip searches are performed by a person of the same sex as the individual being searched.  (ECF No. 40-19, PageID.397). Plaintiff was taken to the booking room shower where he was strip searched before being transported for medical treatment.  Sergeant Hunt and Officer Britton attempted to conduct a strip search, but their search was limited because plaintiff was handcuffed behind his back and he was awaiting transportation outside the jail for stitches.  No contraband was located during this search.  (Plf. Dep. at 39-43, ECF No. 40-4, PageID.319-20; Hunt Aff. ¶ 24, ECF No. 40-5, PageID.333; Britton Aff. ¶ 21, ECF No. 40-6, PageID.338; Allen Aff. ¶¶ 20-21, ECF No. 40-7, PageID.343).

Plaintiff testified that he was subjected to a similar strip search later that day when he returned from the hospital before he was reintroduced into the jail's prisoner population.  Plaintiff believes that Sergeant Hunt performed this search.  (Plf. Dep. at 41-43, ECF No. 40-4, PageID.320).

Officers Britton and Allen looked under plaintiff's mattress.  They found a PBT tube and a white substance.  (Britton Aff. ¶¶ 17-19, ECF No. 40-6, PageID.338; Allen

---

[4] Plaintiff expressed a belief that he was tased a second time and that Officer Allen did it, but he offered no facts or evidence supporting his belief.  (Plf. Dep. at 49-53, ECF No. 40-4, PageID.322-23).

Aff. ¶¶ 22-24, ECF No. 40-7, PageID.344).   The white substance was plaintiff's

Wellbutrin.  (Plf. Dep. at 55-56, 59, 61, ECF No. 40-4, PageID.323-25).  Plaintiff later

pleaded no contest to three counts of attempted resisting and obstructing, apparently

based on his conduct on April 13, 2014, towards Sergeant Hunt and Officers Britton

and Allen.[5]  (Plf. Dep. at 26, ECF No. 40-4, PageID.316).

On May 8, 2014, plaintiff was transferred from the Emmett County Jail to an

MDOC prison facility.  (*Id.* at 10, PageID.312).

On November 9, 2015, plaintiff filed this lawsuit.  (ECF No. 1).

### Discussion

### I.    Excessive Force

The Eighth Amendment limits the power of the states to punish those

convicted of a crime.   Punishment may not be "barbarous," nor may it contravene

society's "evolving standards of decency."   *See Rhodes v. Chapman*, 452 U.S. 337,

345-46 (1981).   The Eighth Amendment also prohibits conditions of confinement

which, although not physically barbarous, "involve the unnecessary and wanton

infliction of pain."   *Rhodes*, 452 U.S. at 346.   Among unnecessary and wanton

inflictions of pain are those that are "totally without penological justification." *Id.*

Plaintiff's claims must be analyzed under the Supreme Court authority

limiting the use of force against prisoners.  The analysis must be made in the context

---

[5] Defendants did not support their motion for summary judgment with evidence
generated in connection with these convictions, and it is not known what testimony
plaintiff may have given during the course of the criminal proceedings.

of the constant admonitions by the Supreme Court regarding the deference that

courts must accord to prison or jail officials as they attempt to maintain order and

discipline within dangerous institutional settings.  *See, e.g., Whitley v. Albers*, 475

U.S. 312, 321-22 (1986).

Generally, restrictions and even harsh conditions of confinement are not

necessarily cruel and unusual punishment prohibited by the Eighth Amendment.

*Rhodes*, 452 U.S. 347.  The Supreme Court has held that "whenever guards use force

to keep order," the standards enunciated in *Whitley*, 475 U.S. 312, should be applied.

*Hudson v. McMillian*, 503 U.S. 1, 7 (1992); *see also Wilkins v. Gaddy*, 559 U.S. 34

(2010).  Not every shove or restraint gives rise to a constitutional violation.  *Parrish

v. Johnson*, 800 F.2d 600, 604 (6th Cir. 1986).  Under *Whitley*, the core judicial inquiry

is "whether force was applied in a good-faith effort to maintain or restore discipline,

or maliciously and sadistically to cause harm."  *Hudson*, 503 U.S. at 6-7.

In determining whether the use of force is malicious or sadistic, the Court

should evaluate the need for application of force, the relationship between that need

and the amount of force used, the threat "reasonably perceived by the responsible

officials," and any efforts made to temper the severity of the forceful response.

*Hudson*, 503 U.S. at 6-7 (citing *Whitley*, 475 U.S. at 321).  While the extent of an

inmate's injury may help determine the amount of force used by the prison or jail

official, it is not dispositive of whether an Eighth Amendment violation has occurred.

*Wilkins*, 559 U.S. at 37.  When prison or jail officials maliciously and sadistically use

force to cause harm, contemporary standards of decency always are violated,

"[w]hether or not significant injury is evident." *Hudson*, 503 U.S. at 9.

Plaintiff must satisfy both an objective and subjective test to establish a viable Eighth Amendment claim.  *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Wilson v. Seiter*, 501 U.S. 294, 297-300 (1991).  To meet the objective component, the prisoner must be subjected to a serious deprivation.  *Wilson*, 501 U.S. at 298.  The federal courts recognize that an Eighth Amendment claim based on the excessive use of force must allege more than a simple assault and battery.  *See Leary v. Livingston County*, 528 F.3d 438, 445 (6th Cir. 2008); *see also Richmond v. Settles*, 450 F. App'x 448, 454 (6th Cir. 2011).

Genuine issues of material fact related to the need for the use of force preclude summary judgment on plaintiff's excessive force claims against Sergeant Hunt. Defendants provide a detailed description of a sequence of events that would support a takedown of a prisoner and use of a taser to gain control over a prisoner who was disregarding repeated orders and actively resisting.  By contrast, plaintiff has provided testimony under penalty of perjury that he did not try to spin around and try to pull his right arm free from Hunt's grip.  He testified that Sergeant Hunt tased him when he was under complete control, was not resisting, and could not move.[6]

Plaintiff falls short of presenting evidence on which a reasonable trier of fact could find in his favor on the objective or subjective components of his other claims related to the use of force.  Wrist lock holds are a "low level of force with a minimal

---

[6] No jury demand has been filed.  If this matter proceeds to trial, Judge Maloney will make credibility determinations regarding this conflicting testimony.

probability of injury." *Lee v. Hefner*, 136 F. App'x 807, 813 (6th Cir. 2005).  Holding

down of plaintiff's legs was a minimal use of force that did not cause any injury.  These

were reasonable interim measures until plaintiff could be placed in handcuffs or other

mechanical restraints.

## II.    Strip Searches

Plaintiff claims a right to damages stemming from the strip searches that

Sergeant Hunt conducted before plaintiff was transported to the hospital and when

plaintiff returned to the jail.  The applicability of the Fourth Amendment to a

prisoner's claim of privacy turns on whether the person invoking the Fourth

Amendment can claim a justifiable, reasonable, or legitimate expectation of privacy

that has been invaded by government action.  *See Hudson v. Palmer*, 468 U.S. 517,

525 (1984).  In determining whether a prisoner has such an interest, the Court must

decide whether a prisoner's expectation of privacy is the kind of expectation that

society is prepared to recognize as reasonable.  *Id.* (citation and quotations omitted).

The *Hudson* Court recognized that while prisoners are not beyond the reach of

the Constitution, curtailment of certain rights is necessary, as a practical matter, to

accommodate a myriad of institutional needs and objectives of prison facilities, chief

among which is internal security.  *Id.* at 523-24 (citation and quotations omitted).

The Supreme Court went on to hold "that society is not prepared to recognize as

legitimate any subjective expectation of privacy that a prisoner might have in his

prison cell." *Id.* at 526. The Court reasoned that "[a] right of privacy in traditional

Fourth Amendment terms is fundamentally incompatible with the close and

continual surveillance of inmates and their cells required to ensure institutional security and internal order."[7]  *Id.* at 527-28.

The Sixth Circuit has held that inmates retain limited rights to bodily privacy under the Fourth Amendment.  *See Cornwell v. Dahlberg*, 963 F.2d 912, 916 (6th Cir. 1992).  In its recent decision in *Sumpter v. Wayne County*, 868 F.3d 473 (6th Cir. 2017), the Sixth Circuit emphasized that in addressing this type of constitutional claim, " 'courts must defer to the judgment of correctional officials unless the record contains substantial evidence showing their policies are an unnecessary or unjustified response to problems of jail security.'"  *Id.* at 481 (quoting *Florence v. Bd. of Chosen Freeholders of Cty. of Burlington*, 566 U.S. 318, 328 (2012)).  In *Sumpter*, the Sixth Circuit endorsed a three-step analysis:  "First, we determine the nature of intrusion, examining the scope, manner, and location of the search.  Second, we evaluate the need for the search, giving due deference to the correctional officer's exercise of h[is] discretionary functions.  And third, we determine whether the search was reasonably related to legitimate penological interests by weighing the need against the invasion."  868 F.3d at 482 (citations and quotations omitted).

The Sixth Circuit recognizes that a strip search is an extreme intrusion.  *Id.* at 483.  But the searches in this case were conducted in a relatively private shower area

---

[7] In *Hunter v. Palmer*, this Court noted that the Seventh Circuit "has construed *Hudson* as holding categorically that 'the Fourth Amendment does not protect privacy interests within prisons.'"  *Hunter v. Palmer*, 2017 WL 1276762, at *9 (quoting *Johnson v. Phelan*, 69 F.3d 144, 150 (7th Cir. 1995)).

with only two male officers being present. "[I]n the corrections setting, [] an inmate's interest in being free from privacy invasions must yield to the realities of operating a safe and effective corrections system." *Id.* Stopping plaintiff from continuing to abuse his prescription medication was an appropriate penological justification. *Id.* at 484. The same is true for preventing introduction of contraband by a prisoner who has been transported outside the jail. *See Dobrowolskyj v Jefferson Cty.*, 823 F.2d 955, 959 (6th Cir. 1987); *see also Jackson v. Herrington*, 393 F. App'x 348, 355 (6th Cir. 2010) (Transport from or through an area to which the public may have access "is an objective circumstance under which the institution may set security procedures including strip searches of the transferred inmates.").

The searches conducted by Sergeant Hunt were reasonably related to legitimate penological objectives. Plaintiff has not presented evidence on which a reasonable trier of fact could find in his favor on these claims.

## III.   Qualified Immunity

Defendants are also entitled to summary judgment on the basis of qualified immunity on all claims where dismissal was recommended in the previous sections. Plaintiff has not presented evidence sufficient to satisfy the first prong of the qualified immunity analysis on those claims for the reasons stated in the previous sections.

The second prong of the qualified immunity analysis " 'must be undertaken in light of the specific context of the case, not as a broad general proposition.' " *Brosseau v. Haugen*, 543 U.S. at 198. It was plaintiff's burden to convince the Court that the law was clearly established when defendants acted on April 13, 2014. *See  Johnson*

*v. Moseley*, 790 F.3d 649, 653 (6th Cir. 2015)*.; Shreve v. Franklin County, Ohio*, 743 F.3d 126, 134 (6th Cir. 2014).  Plaintiff made no attempt to shoulder, much less carry his burden.[8]  His briefs (ECF No. 45, 46) fail to cite any case, much less cases that would clearly establish the constitutional rights that he claims each defendant's actions violated.  Plaintiff did not satisfy his burden by ignoring it.  *See Sabin v. Karber*, No. 1:14-cv-296, 2017 WL 4160950, at *12 (W.D. Mich. Sept. 20, 2017).

Sergeant Hunt is not entitled to qualified immunity on plaintiff's excessive force claims based on Hunt's takedown and taser use because defendant's qualified immunity arguments were insufficient to shift the burden to plaintiff.  A "defendant bears the initial burden of coming forward with facts to suggest that he acted within the scope of his discretionary authority during the incident in question."  *Gardenhire v. Schubert*, 205 F.3d 303, 311 (6th Cir. 2000).

Defendant Hunt's argument on the issue of his taser use consists of one sentence:  "Use of Taser is not a per se violation of a prisoner's Eighth Amendment rights."  (Defendants' Brief at 16, ECF No. 40, PageID.286) (citing *Caldwell v. Moore*, 968 F.2d 595, 600 (6th Cir. 1992)).  This case does not involve any claim that use of a taser constitutes a *per se* Eighth Amendment violation.  The Sixth Circuit has "often found that the reasonableness of an officer's use of a taser turns on active resistance."

---

[8] On April 12, 2017, plaintiff claimed that he was unable to file a proper response to defendant's motion because he lacked access to a law library in the Cheboygan County Jail.  (Plaintiff's Brief at 1, ECF No. 46, PageID.433).  This excuse does not suffice.  Plaintiff was released on or before August 23, 2017 (ECF No. 48), and he never attempted to supplement his response to defendants' motion for summary judgment.

*Kent v. Oakland Cty.*, 810 F.3d 384, 392 (6th Cir. 2016).  Defendant ignores that, for present purposes, the Court must accept as true plaintiff's sworn testimony that when Sergeant Hunt tased him, he was under complete control, was not resisting, and could not move.

Sergeant Hunt's argument with regard to the takedown is likewise flawed. The fact that the Court "must judge the reasonableness of the force used from the perspective and with the knowledge of the defendant officer,"[9] does not mean that the sergeant's version of events, based on plaintiff trying to spin around and pull his right arm free of Hunt's grip, must be accepted.  Plaintiff testified that he made relatively minor motions with his left hand or arm and Sergeant Hunt never claimed that he felt threatened by such motions.  Defendant Hunt fails to address qualified immunity regarding the takedown viewing the facts in the light most favorable to plaintiff.

## Recommended Disposition

For the foregoing reasons, I recommend that defendants' motion for summary judgment (ECF No. 40) be granted in part and denied in part.  I recommend that defendants' motion be granted on all plaintiff's claims against Officers Allen and Britton and all plaintiff's claims against Sergeant Hunt related to the strip searches. I recommend that defendants' motion be denied on plaintiff's claims that defendant Hunt used excessive force in violation of his Eighth Amendment rights when he performed a takedown maneuver and when he tased plaintiff while plaintiff was

---

[9] *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2474 (2015).

under complete control and offering no resistance.

Dated:   December 27, 2017          /s/  Phillip J. Green
                                     PHILLIP J. GREEN
                                     United States Magistrate Judge


## NOTICE TO PARTIES

ANY OBJECTIONS to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b).  Failure to file timely and specific objections may constitute a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 458 (6th Cir. 2012); *United States v. Branch*, 537 F.3d 582, 587 (6th Cir. 2008).  General objections do not suffice.  *See McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006).